**John K. BALDWIN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civil Action No. 09–0033.**

United States District Court, Northern Mariana Islands.

Sept. 26, 2011.

Daniel Cade Stafford, Bridge Capital, LLC, Deborah Deitsch–Perez, Lackey Hershman, Dallas, TX, Gregory G. Koebel, David G. Banes, O'Connor Berman Dotts & Banes, Saipan, MP, for Plaintiff.

Jeremy N. Hendon, Lauren M. Castaldi, United States Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S JANUARY 22, 2010, ORDER STRIKING BOTH OF PLAINTIFF'S JURY DEMANDS AND MOTION UNDER RULE 6(b) TO ALLOW LATE JURY DEMAND

MARK W. BENNETT, District Judge.

Taxation without representation is tyranny.

—James Otis, Jr.

Taxation with representation ain't so hot either.

—Gerald Barzan

**1092**

## TABLE OF CONTENTS

I. INTRODUCTION .................................................1092
 A. Factual Background ...............................................1093
 B. Procedural Background ...........................................1093
 1. The Government's original Motion To Strike ........................1094
 2. Chief Judge Munson's Order .......................................1095
 3. Baldwin's Mandamus Efforts ......................................1096
 4. Baldwin's Motion To Reconsider ...................................1096

II. ANALYSIS .....................................................1097
 A. Standard Of Review For Motions To Reconsider ........................1097
 1. Reconsideration of an interlocutory order ...........................1098
 2. Reconsideration of the interlocutory order of another judge .............1099
 B. Jury Demand A ..................................................1105
 1. Chief Judge Munson's Order .......................................1105
 2. Arguments by the parties .........................................1105
 3. Analysis ........................................................1106
 C. Jury Demand B ..................................................1111
 1. Chief Judge Munson's Order .......................................1111
 2. Arguments by the parties .........................................1111
 3. Analysis ........................................................1111
 a. Federal Rule of Civil Procedure 39(b) ...........................1111
 b. Federal Rule of Civil Procedure 6(b) ...........................1113

III. CONCLUSION ...................................................1119

The jury system is the handmaid of freedom. It catches and takes on the spirit of liberty, and grows and expands with the progress of constitutional government. Rome, Sparta and Carthage fell because they did not know it, let not England and America fall because they threw it away.[1]

 —Charles S. May

## I. INTRODUCTION

Arising out of a tax dispute between a citizen and the United States of America, this case raises several probing, esoteric, and murky procedural questions concerning a highly unusual way to obtain the "handmaid of freedom"—a demand for a jury trial—by the citizen. Before addressing whether the jury demand here was proper, however, I must unravel the Gordian Knot[2] of the appropriate standard of review for one district court judge recon-

---

[1] Charles S. May, Commencement Address to the University of Michigan Law School (Mar. 1875), in J.W. DONOVAN, MODERN JURY TRIALS AND ADVOCATES, 165–90 (2d rev. ed., New York, Banks & Brothers 1882).

[2] The Gordian Knot, a favorite allusion for courts facing labyrinthine precedent or statutory provisions, originates from a myth surrounding Alexander the Great:

 Gordius, a poor countryman, ... was taken by the people and made king, in obedience to the command of the oracle, which had said that their future king should come in a wagon. While the people were deliberat-

ing, Gordius with his wife and son came driving his wagon into the public square. Gordius, being made king, dedicated his wagon to the deity of the oracle, and tied it up in its place with a fast knot. This was the celebrated *Gordian knot*, which, in after times it was said, whoever should untie should become lord of all Asia. Many tried to untie it, but none succeeded, till Alexander the Great, in his career of conquest, came to Phrygia. He tried his skill with as ill success as others, till growing impatient he drew his sword and cut the knot.

*See* BULFINCH's MYTHOLOGY 44 (Richard P. Martin ed., 1991).

sidering another's denial of the right to trial by jury—an issue the parties have fuddled.

John K. Baldwin (Baldwin) has filed suit against the United States of America (the Government), seeking a refund under 26 U.S.C. § 7422 of allegedly illegal and erroneous taxes, penalties, and interest. A bench trial is set to proceed in this case in May 2012. Before me at this time is Baldwin's Motion For Reconsideration Of The Court's January 22, 2010, Order Striking Both Of Plaintiff's Jury Demands And Motion Under Rule 6(b) To Allow Late Jury Demand (Baldwin's Motion To Reconsider). (docket no. 70.) Baldwin urges me to reconsider the Order Granting Defendant's Motion To Strike Jury Demand (Strike Order) (docket no. 37), issued by since retired Chief Judge Alex R. Munson. I heard oral arguments on Baldwin's Motion To Reconsider on August 18, 2011.

### A. Factual Background

The following is a brief summary of the relevant facts that gave rise to this case, as outlined in the parties' pleadings. The Internal Revenue Service (IRS) audited Baldwin for tax year 2002 and ultimately assessed taxes, interest, and penalties against him in the sum of $5,080,000.49. *See* Complaint ¶ 19 (docket no. 1); Answer ¶ 19 (docket no. 5). Baldwin asserts that the IRS erroneously and illegally assessed these taxes, interest, and penalties. Complaint ¶ 20. In February 2009, Baldwin paid the $5,080,000.49 assessment to the U.S. Department of Justice. Complaint ¶ 21; Answer ¶ 21. Baldwin also filed a Claim for Refund with the IRS in Febru-

ary 2009 for tax year 2002. Complaint ¶ 23; Answer ¶ 23. The IRS did not take action in response to the Claim for Refund within six months, *see* Complaint ¶ 25; Answer ¶ 25, and Baldwin subsequently filed suit.[3]

### B. Procedural Background

On August 27, 2009, Baldwin filed a complaint with this court,[4] seeking to recover the $5,080,000.49 assessed against him. Complaint ¶¶ 25, 27. On October 23, 2009, the Government filed its answer, denying that the IRS improperly collected the assessment against Baldwin. Answer ¶ 22. Neither Baldwin's complaint nor the Government's answer contained a demand for a jury trial. Baldwin asserts that "the jury demand intended (and believed) to be in the complaint had inadvertently been dropped in the editing process without anyone noticing." Baldwin's Motion To Reconsider at 2:10–12 (docket no. 70).

In the days that followed the Government's answer, the parties attempted to agree on a joint draft case management plan. Pursuant to Federal Rule of Civil Procedure 26(f), counsel conferred by phone on November 4, 2009, but their disagreement on the jury trial issue did not surface at that time. *See* Strike Order at 2:11–14 (docket no. 37). On November 5, 2009, Government counsel e-mailed a draft case management plan to Baldwin's counsel, which indicated that the case would be tried to the court. *Id.* at 2:12–17. On November 9, 2009, Baldwin's counsel e-mailed to Government counsel a competing draft—a redlined version of the Government's plan. *See id.* at 2:17–21; Baldwin's

---

**3.** Notably, Baldwin's decision to sue for a refund in federal court, while not his only option for contesting the IRS's determination of deficiency, was the only method of securing a jury trial. *See infra* note 15.

**4.** Jurisdiction is proper because this is a civil action against the United States for the recov-

ery of an internal revenue tax alleged to have been erroneously or illegally assessed or collected. *See* 28 U.S.C. § 1346(a)(1). Venue is proper in the District of the Northern Mariana Islands because jurisdiction is founded on Section 1346(a)(1), and this is the judicial district where the plaintiff resides. *See* 28 U.S.C. § 1402(a)(1).

Redlined Case Management Plan (docket no. 18). Among other changes, Baldwin struck out the Government's plain text "This is a trial before the Court; no jury," and replaced it with the emboldened text **"This is a jury case."** [5] *See* Baldwin's Redlined Case Management Plan at 4:11.

Unable to agree on a joint case management plan, each party filed its own proposed case management plan on November 11, 2009. *See* Strike Order at 2:22–24. The Government indicated that Baldwin had not timely requested a jury trial. *See* Government's Case Management Conference Statement at ¶ P (docket no. 15). Baldwin asserted that he was entitled to a jury trial but recognized that the Government might disagree. *See* Baldwin's Case Management Conference Statement at ¶ P (docket no. 17).

That same day, Baldwin served and filed a free-standing "Demand for Jury Trial" (docket no. 16).[6] *See* Baldwin's Motion to Reconsider at 7:8–10 (docket no. 70); Government's Response at 2:6–9 (docket no. 74). Several days later, on November 14, 2009, Baldwin filed a Certificate Of Service Of Draft Case Management Plan Containing Jury Demand and attached his Redlined Case Management Statement (docket no. 18). In this Certificate Of Service, Baldwin indicated that he had "served" the Redlined Case Management Plan when his counsel e-mailed it to Government counsel on November 9, 2009. *Id.* at 1:18.[7]

### 1. The Government's original Motion To Strike

On December 19, 2009, the Government moved to strike Baldwin's jury demands.

(docket no. 22.) The Government, though not disputing that Baldwin would otherwise be entitled to a jury trial, argued that Baldwin had failed to make a proper written demand for a jury trial within ten days after the Government's answer, as then required by Federal Rule of Civil Procedure 38(b). The Government first contended that Demand A, Baldwin's Redlined Case Management Statement that stated, "This is a jury case," was not a proper jury demand because it did not constitute a document that could be "served" or "filed" on an opposing party in satisfaction of Rule 38(b). Second, the Government argued that the court should reject Baldwin's Demand B, his free-standing Demand For Jury Trial, as untimely. Finally, the Government asserted that the court should not order a jury trial under Federal Rule of Civil Procedure 39(b), which grants district courts discretion to order a jury trial in spite of a party's failure to make a proper demand. The Government reasoned that because Baldwin's failure was due to his counsel's oversight or inadvertence, this court could not order a jury trial, based on the Ninth Circuit Court of Appeals's narrow interpretation of Rule 39(b) to deny relief where a party's failure is due to oversight or inadvertence.

On December 23, 2009, Baldwin filed his Opposition To United States' Motion To Strike Plaintiff's Timely Jury Demand And, In The Alternative, To Allow Plaintiff's Supplemental Jury Demand. (docket no. 24.) Baldwin argued that Demand A(1) was in proper form, and hence able to be "served" and "filed" because it was in writing and placed the Government on no-

---

**5.** I will refer to Baldwin's Redlined Case Management Statement, e-mailed to the Government on November 9, 2009, as "Demand A."

**6.** I will refer to Baldwin's November 11, 2009, "Demand for Jury Trial" as Demand B.

**7.** The certificate actually states that service was made on *October* 9, 2009, but this is obviously a typo. *See id.*

tice that a jury trial was sought, and (2) was timely and effectively served because it was e-mailed within ten days of the Government's answer to defense counsel, who had signed up for e-filing and thereby consented to service by electronic means. In the alternative, Baldwin contended that the court should exercise its discretion either under Rule 39(b) to order a jury trial or under Rule 6(b) to extend the deadline for making a jury demand under Rule 38(b). Baldwin contended that the equities weighed in favor of extending the jury demand deadline under Rule 6(b): he had missed the jury demand deadline through sheer inadvertence, rather than in bad faith; he made the demand as soon as he realized the omission; and the court's acceptance of the late demand would not prejudice the Government.

On December 31, 2009, the Government filed its reply. (docket no. 28.) The Government first argued that Demand A must be stricken as improper, as Baldwin had still failed to establish that a redlined draft case management statement can be properly "served" and "filed." Second, the Government contended that Demand B must be stricken as untimely, as the Ninth Circuit Court of Appeals's precedent did not permit relief under Rule 39(b), and Baldwin's argument under Rule 6(b) required an impermissible "end-run" around the requirements of Rules 38 and 39.

### 2. Chief Judge Munson's Order

Chief Judge Munson heard oral arguments on the Government's Motion To Strike on January 14, 2010 (docket no. 33), and granted the Motion To Strike on January 22, 2010 (docket no. 37). The court found both the form and timing of Demand A to be impermissible under Rule 38(b). The court held that the parties' e-mail

exchange of draft case management plans did not constitute service: "To elevate an informal e-mail exchange of draft case management plans to the status of 'service' does not comport with the technical sense with which that word is used in the Rule." *Id.* at 4:3–8. The court later elaborated, "When plaintiff's draft case management statement was emailed to defendant, it included the demand for a jury trial, but merely putting plaintiff [*sic*, defendant] on notice that there was a difference of opinion does not count as 'service.'" *Id.* at 5–7.[8] The court also reasoned that Baldwin's Redlined Case Management Statement was not a document that can be "filed" with the court, as "working drafts exchanged by counsel by e-mail before the separate proposed case management plans were actually filed do not qualify as documents which could be 'filed' with the court." *Id.* at 4:8–10. Finally, the court concluded, based on its interpretation of Rule 38(b) to require both service *and* filing of a jury demand within ten days, that Demand A was not timely because Baldwin had not filed it with the court within ten days of the Government's answer.

As for Demand B, the court rejected Baldwin's argument that the court should exercise its discretion to order a jury trial under Rule 39(b). The court noted that, under the Ninth Circuit Court of Appeals's precedent, "the discretion afforded the trial court under 39(b) to order a jury trial even when one has not been timely requested is 'narrow ... and does not permit a court to grant relief when the failure to make a timely demand results from an oversight or inadvertence.'" *Id.* at 4:18–24 (quoting *Pac. Fisheries Corp. v. HIH Cas. & Gen. Ins.,* 239 F.3d 1000, 1002 (9th Cir.2001)). The court then found that

---

8. I note that this language demonstrates that, at the time of the Strike Order, the court understood that Demand A actually put the Government on notice that Baldwin wanted a jury trial.

Baldwin's failure to make a proper and timely demand was due to oversight or inadvertence and therefore concluded, "[U]nder existing Ninth Circuit precedent, this court may not exercise its discretion to order a jury trial despite the failure to timely demand one." *Id.* at 5:10–13. The court did not address Baldwin's Rule 6(b) argument.[9]

### 3. Baldwin's Mandamus Efforts

Baldwin did not seek reconsideration from this court at that time. Instead, he sought mandamus relief from the Ninth Circuit Court of Appeals, which was denied on April 13, 2010. *See Baldwin v. U.S. District Court for the District of the Northern Mariana Islands*, No. 10–70257 (9th Cir. Apr. 13, 2010); *see also* docket no. 40. He filed a motion for reconsideration and reconsideration *en banc*, which the Ninth Circuit Court of Appeals denied on July 8, 2010. *See* Baldwin's Motion To Reconsider at 10:2–4 (docket no. 70). Finally, on October 6, 2010, Baldwin filed a petition for a writ of certiorari with the United States Supreme Court, which was also denied on February 22, 2011. *Baldwin v. U.S. District Court for the District of the Northern Mariana Islands*, —— U.S.

——, 131 S.Ct. 1556, 179 L.Ed.2d 300 (2011).

· Following Chief Judge Munson's retirement, Judge Consuelo B. Marshall was assigned to this case on April 6, 2011. I subsequently assumed the case assignment on July 26, 2011.[10]

### 4. Baldwin's Motion To Reconsider

On June 28, 2011, Baldwin filed his Motion For Reconsideration Of The Court's January 22, 2010, Order Striking Both Of Plaintiff's Jury Demands And Motion Under Rule 6(b) To Allow Late Jury Demand (Motion To Reconsider). (docket no. 70.) Baldwin argues that reconsideration of this court's Strike Order is appropriate here because new evidence has come to light, in the form of the Government's admissions that the filing and service of Demand A was proper, and because the order was clearly erroneous and worked a manifest injustice on Baldwin. Contrary to Chief Judge Munson's order, Baldwin asserts that Demand A, his Redlined Case Management Statement, was properly served and filed within the meaning of Rule 38(b). He alternatively requests that, pursuant to Rule 6(b), I extend the deadline for making a jury demand, such that Demand B,

**9.** I listened to the tape of the oral arguments on January 14, 2010, regarding the Government's Motion To Strike. Neither Baldwin nor the Government discussed the Rule 6(b) argument addressed in their briefs, which likely explains why Chief Judge Munson did not address it in his opinion. In fact, both parties failed to argue in the hearing before Chief Judge Munson many contentions that they now present to me, even though they included them in their briefs to Chief Judge Munson. While the Government argued that Demand A was not proper because it did not constitute a document that could be filed or served, the Government did not explain why e-mail was not proper service in this case. Baldwin failed to clarify that a jury demand need not be both served *and* filed within 10 days under Rule 38(b). Neither party mentioned Demand B and thus failed to address

Rule 39(b) at all or, importantly, the interaction of Rules 39(b) and 6(b).

**10.** This case was assigned to me while I was serving as a visiting judge in the District of the Northern Mariana Islands. The statute authorizing such assignment provides:

[T]he Chief Justice of the United States may assign any other United States circuit or district judge with the consent of the judge so assigned and of the chief judge of his circuit to serve temporarily as a judge in the District Court for the Northern Mariana Islands whenever such an assignment is necessary for the proper dispatch of the business of the court. Such judges shall have all the powers of a judge of the District Court for the Northern Mariana Islands....

48 U.S.C. § 1821(b)(2).

his free-standing Demand For Jury Trial, would be proper. On July 16, 2011, the Government filed an Ex Parte Motion Under Local Rule 7.1.h.3(b), requesting that the court extend the deadline for its response to Baldwin's Motion To Reconsider from July 14, 2011, to July 25, 2011. (docket no. 71.) On the same day, Baldwin responded that he had no objection to the Government's request for an extension of time but highlighted that the Government was requesting the same "grace" period that it seeks to deny Baldwin on his jury demand. (docket no. 72.) Judge William Q. Hayes granted the Government's motion for an extension of time to respond, ordering the Government to respond by July 25, 2011, and Baldwin to file any reply by August 5, 2011. (docket no. 73.) On July 23, 2011, the Government filed its Response To Plaintiff's Motion For Reconsideration (Government's Response) (docket no. 74), in which it urges that I deny Baldwin the proverbial "second bite at the apple" and argues that Baldwin cannot meet the high showing required to warrant reconsideration of an order. The Government incorporates its arguments from its original Motion To Strike and further argues that Baldwin presents no new evidence and succeeds only in raising the same arguments that Chief Judge Munson considered and—the Government contends—correctly rejected in his January 22, 2010, order. On July 27, 2011, Baldwin filed his reply. (docket no. 76.) Baldwin argues that the Government exaggerates the showing necessary to support a motion to reconsider and maintains that reconsideration is appropriate here. He asserts that the law simply does not support Chief Judge Munson's conclusions that Demand A was improper under Rule 38(b) and that Demand B was impermissible as a late demand.

I heard oral arguments on Baldwin's Motion To Reconsider on August 18, 2011. Deborah Deitsch–Perez, from Lackey Hershman, and David Banes, from O'Connor Berman Dotts & Banes, appeared in person on behalf of Baldwin. Jessica Cruz, from the U.S. Attorney's Office, appeared in person, and Jeremy Hendon and Lauren Castaldi, from the U.S. Department of Justice Tax Division, appeared by video on behalf of the Government. (docket no. 79.) The parties were well-prepared for the issues they presented, and the arguments were spirited and illuminating.

## II. ANALYSIS

### A. Standard Of Review For Motions To Reconsider

This case presents a somewhat unusual situation that demands particular caution and care in determining the appropriate standard of review. I must rule on Baldwin's motion to reconsider the order striking his jury demand, but I was not the judge to issue that order. Typically, motions for reconsideration[11] are "creatures of local rule or practice." *United States v. Comprehensive Drug Testing, Inc.,* 473

---

**11.** Both parties inexplicably direct me to the standard applicable to motions for reconsideration of *judgments* under Federal Rule of Civil Procedure 59(e): a district court may grant such a motion on the basis of new evidence, an intervening change in controlling law, or clear error or manifest injustice. *See, e.g., United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.,* 555 F.3d 772, 780 (9th Cir. 2009) ("Under Rule 59(e), it is appropriate to alter or amend a judgment if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." (internal quotation marks and citation omitted)). *Compare* Baldwin's Motion To Reconsider at 10:17–11:1 (citing *Sch. Dist. No. 1J v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993) (discussing standard in the context of a Rule 59(e) motion to reconsider the court's grant of summary judgment); *Lopes v. Astrue,* 277 Fed.Appx. 757, 760–61 (9th Cir.2008) (referring to stan-

F.3d 915, 955 (9th Cir.2006) (Thomas, J., concurring in part and dissenting in part), *withdrawn and superseded on other grounds by* 513 F.3d 1085 (9th Cir.2008); *see also Motorola, Inc. v. J.B. Rodgers Mech. Contractors,* 215 F.R.D. 581, 583–86 (D.Ariz.2003) (surveying local rules for motions for reconsideration of interlocutory orders from various districts in the Ninth Circuit).[12] However, the District for the Northern Mariana Islands has no local rule regarding motions for reconsideration.

### 1. Reconsideration of an interlocutory order

Absent specific guidance from a local rule on motions to reconsider, I turn to the broader standards that direct a district court's review of a prior interlocutory order. As a general matter, " '[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.' " *City of Los Angeles v. Santa Monica Baykeeper,* 254 F.3d 882, 885 (9th Cir.2001) (quoting *Melancon v. Texaco,* 659 F.2d 551, 553 (5th Cir.1981)); *accord Grunwald,* 400 F.3d at 1124 ("[W]e have long recognized 'the well-established rule that a district judge always has power to modify or to overturn an interlocutory order or decision while it remains interlocutory.' " (quoting *Tanner*

dard for motion to amend or alter the judgment under Rule 59(e))), *with* Government's Response at 7:2–5 (docket no. 74) (citing *Nunes v. Ashcroft,* 375 F.3d 805, 807–08 (9th Cir.2004)) (reviewing district court's denial of motion to reconsider its dismissal of petitioner's habeas petition, a final order (in turn citing *Sch. Dist. No. 1J,* 5 F.3d at 1263)).

Importantly, Rule 59(e) only applies to a "judgment." FED.R.CIV.P. 59(e); *Balla v. Idaho State Bd. of Corr.,* 869 F.2d 461, 466–67 (9th Cir.1989) ("Rule 59(e) clearly contemplates entry of judgment as a predicate to any motion." (citation and internal quotation marks omitted)). Rule 54(a) explains that a "judgment," wherever used in the Federal Rules of Civil Procedure, is "any order from which an appeal lies," FED.R.CIV.P. 54(a), and the Ninth Circuit Court of Appeals has interpreted Rule 54(a)'s language to include "final judgments and appealable interlocutory orders." *Balla,* 869 F.2d at 466. A final judgment " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)); *accord Balla,* 869 F.2d at 467. An interlocutory order is appealable if it falls within the categories outlined in 28 U.S.C. § 1292(a) or if a district court judge has certified the order, making it appealable under 28 U.S.C. § 1292(b). *See, e.g., Credit Suisse First Bos. Corp. v. Grunwald,* 400 F.3d 1119, 1124 n. 6 (9th Cir.2005) (analyzing appellate jurisdiction by looking to the categories in 28 U.S.C. § 1292(a)). Chief Judge Munson's Strike Order is not a final judgment, as the merits of this case remain undecided, *see Coopers & Lybrand,* 437 U.S. at 467, 98 S.Ct. 2454, and it is not an appealable interlocutory order because it does not fall within the categories in § 1292(a), and neither party has sought to certify it for appeal under § 1292(b), *see* 28 U.S.C. § 1292.

As such, the standards for reconsideration of *judgments* do not bind me here, though it is certainly true that courts may "look to the standards under Rule 59(e) and Rule 60(b) for guidance" in "assessing a motion to modify an interlocutory order." *See Jadwin v. County of Kern,* No. 07–CV–0026–OWW–DLB, 2010 WL 1267264, at *9 (E.D.Cal. Mar. 31, 2010). Ultimately, as explained *infra,* the standard that I apply in this order is similar to that for Rule 59(e) motions, but it comes not from cases interpreting Rule 59(e), but rather from the law of the case doctrine, as applied to a district court judge's review of the interlocutory order of another judge in the same case. *See Delta Sav. Bank v. United States,* 265 F.3d 1017, 1027 (9th Cir.2001).

**12.** Among the various district court local rules, common grounds that support a motion for reconsideration are the emergence of new facts, a change in the law, manifest error by the court in the first order (at least in two districts), and failure to consider material facts. *Motorola,* 215 F.R.D. at 585–86.

*Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir.1963))). This inherent power "to reconsider, rescind, or modify" identified by the Ninth Circuit Court of Appeals is consistent with the approach of the Federal Rules of Civil Procedure to a district court's ability to revise its interlocutory orders:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

FED.R.CIV.P. 54(b). Of course, a district court need not rely solely on Rule 54(b)'s grant of discretion. Because a district court's authority over its interlocutory orders ultimately derives from the common law, "[it] is not abridged by the Federal Rules of Civil Procedure." *See City of Los Angeles*, 254 F.3d at 887 (explaining that Rule 60 does not limit a court's power to reconsider its interlocutory orders). Rather, it is a " 'plenary power' " to be " 'exercised in justice and good conscience,' " *id.* (quoting *United States v. Jerry*, 487 F.2d 600, 604 (3d Cir.1973)), " 'for cause seen by [the district court] to be sufficient,' " *id.* at 885 (quoting *Melancon*, 659 F.2d at 553). A classic example of the exercise of this inherent power is a district court's grant of relief " 'from manifest error.' " *See id.* at 887 (quoting *Bucy v. Nevada Const. Co.*, 125 F.2d 213, 217 (9th Cir.1942)).

### 2. *Reconsideration of the interlocutory order of another judge*

■ Complicating this analysis, however, is the important fact that I am not being asked to reconsider my own interlocutory order. Rather, as indicated above, I am being asked to reconsider an interlocutory order made by a since-retired judge of this court. It is assuredly more likely that two judges will see an issue differently than it is that the same judge will see the same issue differently across time. Certainly, judges must, in light of the overarching "principles of comity and uniformity," make every effort " 'to preserve the orderly functioning of the judicial process' " when reconsidering an order of a prior judge in the same case. *See Castner v. First Nat'l Bank of Anchorage*, 278 F.2d 376, 379–80 (9th Cir.1960) (quoting *T.C.F. Film Corp. v. Gourley*, 240 F.2d 711, 714 (3d Cir.1957)); *accord Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 530 (9th Cir.2000).

The question, then, is whether the standards for reconsideration should be more stringent under these unusual circumstances, in order to constrain the rate at which successor judges grant motions to reconsider interlocutory orders. The Ninth Circuit Court of Appeals has not been entirely clear in explaining when a district court judge may reconsider the prior interlocutory orders of another district judge in the same case. In response to a petitioner's charge that a subsequent judge had violated the "law of the case" doctrine by granting summary judgment after a prior judge's denial of summary judgment, the Ninth Circuit Court of Appeals indicated that the "law of the case" doctrine does indeed apply to a district court's review of an interlocutory order by another judge in the same case:

> While courts have some discretion not to apply the doctrine of law of the case, that discretion is limited. The prior decision should be followed unless: (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.

*Delta Sav. Bank v. United States,* 265 F.3d 1017, 1027 (9th Cir.2001) (finding intervening controlling law made reconsideration appropriate) (quoting *Jeffries v. Wood,* 114 F.3d 1484, 1489 (9th Cir.1997) (reciting standard for when, according to the law of the case, an appellate court may reconsider a prior appellate order in the same case), *overruled on other grounds by Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)).

In a case decided a month before *Delta Savings Bank,* the Ninth Circuit Court of Appeals explicitly rejected the application of the "law of the case" doctrine to a district court's discretion to reconsider its own interlocutory orders, finding that "[t]he doctrine simply does not impinge upon a district court's power to reconsider its own interlocutory order provided that the district court has not been divested of jurisdiction over the order." *City of Los Angeles,* 254 F.3d at 888 (citing *United States v. Houser,* 804 F.2d 565, 567 (9th Cir.1986)); *accord United States v. Smith,* 389 F.3d 944, 948–49 (9th Cir.2004). Though *City of Los Angeles* may appear easily distinguishable, as it involved the authority of a judge to reconsider his own interlocutory orders, and *Delta Savings Bank* speaks to the power of a judge to review the interlocutory orders of a prior judge in the same case, the Ninth Circuit Court of Appeals has also reasoned, seemingly to the contrary, that " 'the interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment, and *may be modified to the same extent if the case is reassigned to another judge.*' " *Amarel v. Connell,* 102 F.3d 1494, 1515 (9th Cir.1997) (quoting *In re United States,* 733 F.2d 10, 13 (2d Cir. 1984)) (emphasis added). Adding to the confusion of this issue, *Delta Savings Bank* cited *Amarel* for the point of law that " 'We review for abuse of discretion a district judge's decision to reconsider an interlocutory order by another judge of the same court,' " *see Delta Sav. Bank,* 265 F.3d at 1027 (quoting *Amarel,* 102 F.3d at 1515), but then, as described above, went on to provide that the "law of the case" doctrine binds a subsequent judge in reviewing prior interlocutory orders.

In a separate line of cases, the Ninth Circuit Court of Appeals has applied the standard from *Castner v. First National Bank of Anchorage,* 278 F.2d 376 (9th Cir.1960), where the court held that a district judge may review an order of a prior judge in the same case for "cogent reasons and exceptional circumstances," and ultimately concluded, "The second judge must conscientiously carry out his judicial function in a case over which he is presiding. He is not doing this if he permits what he believes to be a prior erroneous ruling to control the case." *Id.* at 380 (finding no abuse of discretion where the second district judge assigned to the case reviewed and set aside the prior judge's order denying motions to dismiss and for summary judgment); *see Zipfel v. Halliburton Co.,* 832 F.2d 1477, 1481 (9th Cir.1987), *modified and aff'd by* 861 F.2d 565 (9th Cir. 1988) (applying *Castner* and finding no abuse of discretion where the second district judge reconsidered the denial of a *forum non conveniens* motion, where the first judge did not follow relevant Supreme Court and Ninth Circuit precedent); *see Fairbank,* 212 F.3d at 532 ("[T]he District Court in its discretion may revisit prior interlocutory decisions entered by another judge in the same case if there are cogent reasons or exceptional circumstances.") (applying *Castner* and affirming district court judge's order granting summary judgment after removal to federal court, despite state court's prior denial of summary judgment); *accord Preaseau v. Prudential Ins. Co. of Am.,* 591 F.2d 74, 79–80

(9th Cir.1979) (same as *Fairbank* ).[13]

I find that the *Castner* standard, which directs a judge to revisit a "prior erroneous ruling [that] control[s] the case" for "cogent reasons and exceptional circumstances," *Castner,* 278 F.2d at 380, addresses the same concern at the heart of the first ground enumerated in *Delta Savings Bank,* which permits a second judge to reconsider a prior judge's interlocutory order if "the decision is clearly erroneous and its enforcement would work a manifest injustice. . . ." *Delta Sav. Bank,* 265 F.3d at 1027.[14] Nevertheless, because the

---

**13.** In a recent review of a visiting judge's grant of summary judgment after a denial of summary judgment by a prior judge in the same case, the Ninth Circuit Court of Appeals, citing neither *Delta Savings Bank* nor *Castner,* expressed uncertainty as to "whether the law of the case doctrine ever applies in district court to previous rulings of that district court." *See Mark H. v. Lemahieu,* 513 F.3d 922, 932 n. 8 (9th Cir.2008). The court ultimately concluded that it need not decide, at least for the purposes of *Mark H.,* whether the doctrine ever applies, as the visiting judge in *Mark H.* based his grant of summary judgment on a different ground than the previous denial, thereby avoiding the doctrine of the law of the case altogether. *See id.*

The Ninth Circuit Court of Appeals has, however, considered *Castner* and *Delta Savings Bank* together in two unpublished cases. The court applied these standards differently in each case. In *Hartford Fire Ins. Co. v. Wasser High–Tech Coatings, Inc.,* 44 Fed. Appx. 219 (9th Cir.2002), the court applied both standards together:

> Judges sitting on the same court should not attempt to overrule the decisions of each other unless "cogent reasons" or "exceptional circumstances" appear. *Castner v. First Nat'l Bank,* 278 F.2d 376, 380–81 (9th Cir.1960). "The prior decision should be followed unless: (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Delta Savings Bank v. United States,* 265 F.3d 1017, 1027 (9th Cir.2001) (quoting *Jeffries v. Wood,* 114 F.3d 1484, 1489 (9th Cir.1997)) (en banc).

*Id.* at 220–21. In a later case, the court focused on the *Castner* standard but also cited *Delta Savings Bank,* though it did not refer to the three grounds for reconsideration articulated in *Delta Savings Bank:*

> The district court was not barred by the law of the case from reconsidering its prior order despite the reassignment of the case to a different judge. The law of the case is a guide to courts' exercise of discretion, rather than a rigid rule. *See Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 216 F.3d 764, 787 (9th Cir.2000); *United States v. Miller,* 822 F.2d 828, 832–33 (9th Cir.1987); *Castner v. First Nat'l Bank of Anchorage,* 278 F.2d 376, 379–80 (9th Cir.1960). There is no strict prohibition against one district judge reconsidering and overturning the interlocutory order or ruling of a prior district judge in the same case before final judgment, though "one judge should not overrule another except for the most cogent reasons." *United States v. Desert Gold Min. Co.,* 433 F.2d 713, 715 (9th Cir.1970); *see also, e.g., Abada v. Charles Schwab & Co., Inc.,* 300 F.3d 1112, 1117–18 (9th Cir.2002); *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 530 (9th Cir.2000). Cogent reasons include a determination that a prior order was clearly erroneous and would result in a "useless trial." *Castner,* 278 F.2d at 380; *see also Delta Sav. Bank v. United States,* 265 F.3d 1017, 1027 (9th Cir.2001).

*EEOC v. Serrano's Mexican Rests.,* 306 Fed. Appx. 406, 407 (9th Cir.2009).

Thus, cases since *Delta Savings Bank* have not been clear in analyzing the application of the law of the case doctrine to a judge's reconsideration of an interlocutory order by another judge in the same case.

**14.** The other two grounds for reconsideration listed in *Delta Savings Bank,* an intervening change in controlling law and the emergence of "substantially different evidence," *see Delta Sav. Bank,* 265 F.3d at 1027, do not apply here, save one exception. Baldwin has not argued that there has been a change in the law. The evidence before me is not "substantially different" from that before Chief Judge Munson, other than Baldwin's Exhibit 5 (docket no. 70–2 at 34–35), a copy of the User Agreement for Electronic Case Filing at the United States District Court for the Northern Mariana Islands. This evidence is relevant

Ninth Circuit Court of Appeals's precedent is unclear as to which standard controls, I err on the side of caution and apply the stricter *Delta Savings Bank* standard, which requires not just error, but "clear[ ] error[ ]" that "work[s] a manifest injustice." *See id.*

■ The central question for my review is whether the Strike Order was "clearly erroneous," as it is apparent that, if clearly erroneous, the Strike Order "work[ed] a manifest injustice." To support a finding of manifest injustice, "[a]t a minimum, the challenged decision should involve a signif-

icant inequity or the extinguishment of a right before being characterized as manifestly unjust." *Jeffries*, 114 F.3d at 1492. The Strike Order extinguished Baldwin's right to a jury trial. The significance of the jury trial right for Baldwin is apparent from the considerable effort he has expended to reverse the Strike Order, including petitioning the Ninth Circuit Court of Appeals and the United States Supreme Court to set it aside. Moreover, the fact that Baldwin chose to pay the challenged tax and sue for a refund in this court strongly suggests that he desired a jury trial at the outset of this case.[15]

for my analysis of whether Baldwin properly served Demand A, *see infra* Part II.B.3.

15. Baldwin chose to pay the assessment and later sue for a refund. *See* 26 U.S.C. § 7422(a) (permitting a taxpayer to sue for a refund of allegedly erroneous or illegal taxes the taxpayer has already paid); 26 U.S.C. § 6532(a)(1) (requiring that the taxpayer file a claim of refund with the IRS and wait six months before filing suit in federal district court). Notably, this strategy was not the only method available to Baldwin to contest the IRS's determination that his tax payments were deficient. He could have challenged the tax deficiency without paying the tax by filing a petition for redetermination within ninety days of receiving the IRS's notice of deficiency, but this approach would have landed him in the United States Tax Court. *See* 26 U.S.C. § 6213(a) (Within ninety days of receiving a notice of deficiency, "the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency."); 26 U.S.C. § 6212(a) (authorizing the IRS to send a notice of deficiency to the taxpayer); 1 Gerald A. Kafka & Rita A. Cavanagh, Litigation of Federal Civil Tax Controversies § 1.01 (2d ed. 1997) (explaining that for deficiency litigation in Tax Court, the "notice of deficiency identifying a proposed tax liability is the sole jurisdictional prerequisite, and prior payment of the deficiency is not required" but noting that the taxpayer must timely file (usually within ninety days) a petition for redetermination for the Tax Court to have jurisdiction).

While a tax refund suit was not Baldwin's sole option for contesting the IRS's determination, it was only through a tax refund suit—depriving himself of the use of the money at

least during the pendency of the litigation—that Baldwin could take his case to a district court. *See* 28 U.S.C. § 1346(a)(1) (granting district courts original jurisdiction over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected"); 26 U.S.C. § 7422(a); Kafka & Cavanagh, *supra*, § 1.01.

Importantly, it is only through a district court tax refund suit that Baldwin could try his case before a jury. *See* 28 U.S.C. § 2402 ("[A]ny action against the United States under section 1346(a)(1) shall, at the request of either party to such action, be tried by the court with a jury."); *McCoy v. Commissioner*, 696 F.2d 1234, 1237 (9th Cir.1983) (rejecting petitioners' claim of a right to a jury trial in Tax Court and concluding, "[B]y paying the tax and perfecting a refund suit the McCoys could have obtained a jury trial. They voluntarily chose not to do this."); *Olshausen v. Commissioner*, 273 F.2d 23, 27 (9th Cir.1959), *cert. denied*, 363 U.S. 820, 80 S.Ct. 1256, 4 L.Ed.2d 1517 (1960) ("If [petitioner] desired a jury trial, he should have paid the tax first and then sued for a refund in the district court. There is no right to a jury trial without paying first as a statutory matter …." (citing *Flora v. United States*, 357 U.S. 63, 68, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd on rehear'g by* 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960))); Kafka & Cavanagh, *supra*, § 1.07.

It is certainly true that a plaintiff may choose to pre-pay a tax assessment and sue for a refund in federal district court for reasons other than to secure a trial by jury. For instance, a plaintiff could have missed the ninety day deadline for filing a petition with

Baldwin himself has stated under penalty of perjury that he prepaid the assessment for the express purpose of obtaining a jury trial. Decl. of John K. Baldwin ¶ 2 (docket no. 26). Additionally, Baldwin's counsel has stated under penalty of perjury that she unintentionally omitted the jury demand in the original complaint and that she attempted to right her error as soon as it came to her attention. *See* Second Decl. of Deborah Deitsch–Perez at 2 (docket no. 70–1). Thus, there is strong evidence that the jury demand was omitted accidentally, and there can be no doubt that the Strike Order radically altered the overall complexion of this case and Baldwin's litigation strategy in particular.

Moreover, I am especially cognizant of the enduring and historical importance of the jury trial right at stake in this Motion To Reconsider. The Supreme Court "has long emphasized the importance of the jury trial." *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510 n. 18, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) (citing *Parsons v. Bedford,* 28 U.S. (3 Pet.) 433, 446, 7 L.Ed. 732 (1830)) ("The trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy."); *Galloway v. United States,* 319 U.S. 372, 396–97 n. 1, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943) (Black, J., dissenting) (" 'I consider trial by jury as the only anchor ever yet imagined by man, by which a government can be held to the principles of its constitution.' " (quoting 3 WRITINGS OF THOMAS JEFFERSON 71 (Washington ed.))).

■ The right to a jury trial in a civil tax refund case is statutory, not constitutional. *See* 28 U.S.C. § 2402; *McCoy,* 696 F.2d at 1237 ("Because there is no common law right of action against the sovereign, the Seventh Amendment does not apply to suits against the United States." (citing *McElrath v. United States,* 102 U.S. 426, 440, 12 Otto 426, 26 L.Ed. 189 (1880))); *Olshausen,* 273 F.2d at 27 ("There is ... no right to a jury trial at all in tax matters as a constitutional requirement." (citing *Wickwire v. Reinecke,* 275 U.S. 101, 105, 48 S.Ct. 43, 72 L.Ed. 184 (1929) ("[T]he right of the petitioner to a jury in [a tax refund case] is not to be found in the Seventh Amendment to the Constitution, but merely arises by implication from the provisions of section 3226, Revised Statutes,[16] ... which has reference to a suit at law."))).[17]

the Tax Court for a redetermination of deficiency. *See* 26 U.S.C. § 6213; KAFKA & CAVANAGH, *supra,* § 1.01. The Government asserted in its brief to the United States Supreme Court in response to Baldwin's petition for writ of certiorari that many plaintiffs intentionally waive their right to a jury trial in tax refund cases in federal district court. *See* Brief For The United States In Opposition at 6, *Baldwin v. U.S. District Court for the District of the Northern Mariana Islands,* —— U.S. ——, 131 S.Ct. 1556, 179 L.Ed.2d 300 (2011) (No. 10–469), 2011 WL 96296 at *6 (citing *Dobson v. Commissioner,* 320 U.S. 489, 495, 64 S.Ct. 239, 88 L.Ed. 248 (1943) (noting that jury trials may be and often are waived in tax cases)). I note, however, that neither *Dobson* nor the Government cite any empirical data for the proposition that many plaintiffs waive their right to a jury trial in federal district court. Moreover, *Dobson* dates back to 1943, so I question its relevance to civil tax cases today.

Nevertheless, no matter what may often be true in other cases, it appears that in *this* case Baldwin very much intended to seek a jury trial.

**16.** Revised Statutes Section 3226 was "the predecessor of the present claim-for refund-statute, 26 U.S.C. [§ 7422(a) ]." *Flora,* 357 U.S. at 65, 78 S.Ct. 1079. Congress later explicitly granted the statutory right to a jury trial in civil tax refund cases in 1954, now codified at 28 U.S.C. § 2402. *See Lehman v. Nakshian,* 453 U.S. 156, 161 n. 8, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981).

**17.** *But see United States v. New Mexico,* 642 F.2d 397, 401 (10th Cir.1981) ("We are persuaded that the right of a taxpayer to a jury trial in refund cases is rooted in the common

Nevertheless, while not grounded in the Seventh Amendment, the statutory right to a jury trial in civil tax cases is no less prized and worthy of protection than its constitutional counterpart. The Government argued in its brief to the United States Supreme Court that "[Baldwin's] invocation ... of the 'hallowed' constitutional right to trial by jury is misplaced in the circumstances of this case, for there is no Seventh Amendment right to a jury trial in a case brought against the United States." *See* Brief For The United States In Opposition at 6, *Baldwin v. U.S. District Court for the District of the Northern Mariana Islands,* —— U.S. ——, 131 S.Ct. 1556, 179 L.Ed.2d 300 (2011) (No. 10–469), 2011 WL 96296 at *6 (citing *McElrath,* 102 U.S. at 440). The United States Supreme Court does not share the Government's belief that a distinction exists between the relative value of a constitutional and statutory jury trial right:

> The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen, whether guaranteed by the Constitution *or provided by statute,* should be jealously guarded by the courts.

*Jacob v. City of New York,* 315 U.S. 752, 752–53, 62 S.Ct. 854, 86 L.Ed. 1166 (1942) (emphasis added). Likewise, Federal Rule of Civil Procedure 38(a) makes no distinction between the two when it provides for the preservation of the civil jury trial right: "The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate." FED.R.CIV.P. 38(a). Moreover, when the Ninth Circuit Court of Appeals has explained that the right to a jury trial in tax refund cases is statutory, rather than constitutional, it has done so not in the context of discriminating between the relative worth of the two rights, but rather to explain that there is no violation of the Seventh Amendment when a plaintiff's case is tried in Tax Court before a judge. *See McCoy,* 696 F.2d at 1237; *Olshausen,* 273 F.2d at 27.

Therefore, in determining whether to exercise my discretion to reconsider Chief Judge Munson's Strike Order, I keep in mind the need to "jealously guard[ ]," *see Jacob,* 315 U.S. at 753, 62 S.Ct. 854, the statutory right to a jury trial in this case. I find that if the Strike Order was clearly erroneous, I would work a manifest injustice if I enforced the order and deprived Baldwin of his statutory right to a jury trial. I now turn to my analysis of the Strike Order. It stands on two bases, as Chief Judge Munson found both Demand A and Demand B to be improper jury demands under Rule 38(b). If I find that the Strike Order was clearly erroneous on

law and was preserved by the Seventh Amendment."). However, the Ninth Circuit Court of Appeals subsequently called into doubt the Tenth Circuit Court of Appeals's analysis of a Seventh Amendment jury trial right in tax refund cases:

> [T]he Tenth Circuit in *United States v. New Mexico* was wrong in at least one respect. The court looked at historical practice in England and early America and concluded there was an historical right to jury trial in tax refund cases. The United States Supreme Court in *Lehman v. Nakshian,* 453 U.S. 156, 161 n. 8, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981), in a footnote observes that there was great historical reluctance to provide for jury trials against the United States in tax refund cases. The Supreme Court says that Congress "broke with precedent" by establishing a statutory right to jury trial in tax refund cases in 1954, whereas the Tenth Circuit said that the 1954 jury trial provision was a "reaffirmation" of a historical right to jury trial in tax refund cases. 642 F.2d at 401. The Tenth Circuit appears to be wrong on this point. *Standard Oil Co. of Cal. v. Arizona,* 738 F.2d 1021, 1027 n. 8 (9th Cir.1984).

either ground, I must grant Baldwin's demand for a jury trial.

### B. Jury Demand A

#### 1. Chief Judge Munson's Order

Chief Judge Munson rejected Demand A for four reasons: (1) he found that e-mailing the Redlined Case Management Statement did not constitute "service"; (2) he determined that Baldwin's Redlined Case Management Statement was not sufficient to serve the Government with his jury demand: "When plaintiff's draft case management statement was e-mailed to defendant, it included the demand for a jury trial, but merely putting plaintiff [*sic*, defendant] on notice that there was a difference of opinion does not count as 'service.'" Strike Order at 5:2–7; (3) he concluded that a Redlined Case Management Statement is not a document that can be "filed" with the court, as "working drafts exchanged by counsel by e-mail before the separate proposed case management plans were actually filed do not qualify as documents which could be 'filed' with the court." *Id.* at 4:8–10; and (4) he determined that the Redlined Case Management Statement was not timely because Baldwin had not filed it with the court within ten days of the Government's answer.

#### 2. Arguments by the parties

Baldwin contends that the Strike Order's conclusion that Demand A was improper under Rule 38(b) was clearly erroneous. Baldwin first asserts that Rule 38(b) only required him to serve Demand A on the Government within ten days of the filing of Government's answer, and allowed him to file his demand within a reasonable amount of time following service. Consequently, Baldwin argues that the Strike Order incorrectly concluded that both service *and* filing must occur

within Rule 38(b)'s ten day timeline. Second, Baldwin argues that the Strike Order's determinations (1) that e-mailing the Redlined Case Management Statement did not constitute service and (2) that the Redlined Case Management Statement did not constitute a document that could be served or filed are inconsistent with the Ninth Circuit Court of Appeals's precedent emphasizing a flexible standard for construing proper jury demands under Rule 38(b). Baldwin also adds that new evidence has emerged, in the form of Government counsel's admission that he signed an agreement to accept electronic service through the district court's electronic filing system.

The Government concedes that the Strike Order incorrectly concluded that a jury demand must be both served and filed within ten days under Rule 38(b). Nevertheless, the Government argues that this error is inconsequential, as Chief Judge Munson correctly determined that Baldwin's Redlined Case Management Statement did not constitute a document that could be properly served or filed in satisfaction of Rule 38(b). The Government additionally contends that Baldwin did not properly serve the Redlined Case Management Statement because Government counsel only consented to electronic service by means of a "Notice of Filing" generated by this court's CM/ECF system, not by e-mail between the parties. Therefore, the Government concludes, the Strike Order's rejection of Demand A still stands on solid ground. Addressing Baldwin's claim that new evidence has emerged, the Government argues that there is no new evidence, as Baldwin has always known that Government counsel participated in electronic case filing and even argued this point in his original Opposition to the Government's Motion To Strike. In any event, the Government argues, Baldwin has not shown how this purportedly "new" evidence is relevant to the Motion To Reconsider.[18]

---

18. I note that the standard here is not new

evidence, but rather "substantially different

### 3. Analysis

Federal Rule of Civil Procedure 38(b) provided, at the relevant time for filing a jury demand in this case in late 2009, that

> On any issue triable of right by a jury, a party may demand a jury trial by:
>
> (1) serving the other parties with a written demand—which may be included in a pleading—no later than 10 days after the last pleading directed to the issue is served; and
>
> (2) filing the demand in accordance with Rule 5(d).

FED.R.CIV.P. 38(b) (2009). Rule 5(d) instructs how to file properly: "Any paper after the complaint that is required to be served—together with a certificate of service—must be filed within a reasonable time after service." FED.R.CIV.P. 5(d)(1).

■ The Ninth Circuit Court of Appeals, recognizing the importance of the jury trial right, has rejected a formalistic approach to testing the adequacy of a jury demand under Rule 38(b), in favor of a flexible standard that " 'indulge[s] every reasonable presumption against waiver' of the jury trial right." *See Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1064 (9th Cir.2005) (quoting *Aetna Ins. Co. v. Kennedy ex rel. Bogash*, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937)); *accord Cal. Scents v. Surco Prods., Inc.*, 406 F.3d 1102, 1108 (9th Cir.2005). This flexible standard "accept[s] jury demands that fall far short of the ideal." *Lutz*, 403 F.3d at 1064 (finding the plaintiff's jury demand, which was "buried" in her prayer for relief

and therefore difficult for court staff to find, to be adequate) (citing *Gargiulo v. Delsole*, 769 F.2d 77, 78–79 (2d Cir.1985) (concluding that the jury demand on the last page of the defendant's answer complied with Rule 38(b), even though its placement made it difficult for court staff to find); *Pradier v. Elespuru*, 641 F.2d 808, 810–11 (9th Cir.1981) (finding a jury trial demand in the body of a complaint to be sufficient to satisfy Rule 38(b))). What is absolutely required, however, is that "the jury demand be sufficiently clear to alert a careful reader that a jury trial is requested on an issue." *Lutz*, 403 F.3d at 1064.

■ Taken together, the Federal Rules of Civil Procedure and the Ninth Circuit Court of Appeals's precedent indicate that a jury demand is adequate if it is (1) written, *see* FED.R.CIV.P. 38(b), and "sufficiently clear to alert a careful reader that a jury trial is requested on an issue," *Lutz*, 403 F.3d at 1064; (2) timely and properly served, *see* FED.R.CIV.P. 38(b); and (3) filed with the court within a reasonable time after service, *see* FED.R.CIV.P. 38(b); 5(d)(1). The court must also bear in mind "that the purpose of Rule 38's demand requirement is to inform the Court and counsel well in advance of trial as to the trial method desired." *See Lutz*, 403 F.3d at 1065 (citation and internal quotation marks omitted); *accord Mondor v. U.S. Dist. Court for Cent. Dist. of California*, 910 F.2d 585, 587 (9th Cir.1990). As a whole, therefore, the test for adequa-

evidence." *See Delta Sav. Bank,* 265 F.3d at 1027. I agree with the Government that Baldwin's argument that Mr. Hendon's "admission" that he participated in electronic case filing does not constitute substantially different evidence. Baldwin argued in his original opposition to the Government's Motion To Strike that Government counsel had consented to service by electronic means. Baldwin's Opposition To Government's Motion To Strike at 4 n. 15 (docket no. 24).

Nevertheless, I find that Baldwin's Exhibit 5, the User Agreement for Electronic Case Filing at the United States District Court for the District of the Northern Mariana Islands (docket no. 70–2 at 34–35), which was not before Chief Judge Munson in the Motion To Strike, is substantially different evidence. *See infra* Part II.B.3.

cy of a jury demand, combined with the presumption against waiver and the understanding of Rule 38's purpose, make for "a great deal of flexibility in how the request is made." *See Lutz*, 403 F.3d at 1064–65. I now evaluate Baldwin's Demand A in light of these requirements to determine if the Strike Order was clearly erroneous in its conclusion that Demand A was improper.

■ First, Baldwin's Demand A meets the plain language requirement under Rule 38(b) that a jury demand be "written." *See* FED.R.CIV.P. 38(b). Baldwin included, "This is a jury case," on his written Redlined Case Management Statement. (docket no. 18.) Rule 38(b) specifies that the written demand *"may* be included in a pleading," *see id.* (emphasis added), but it places no strictures on the type of document in which a jury demand must appear.[19]

The Strike Order cites no cases for the proposition that a jury demand must appear in a certain type of document in order to be "served" and "filed" in satisfaction of Rule 38(b)'s requirements. The Government directs me to only one case, *Wall v. National Railroad Passenger Corp.*, 718 F.2d 906 (9th Cir.1983), which held that "checking the jury demand box on the civil cover sheet is insufficient to meet the requirements of rule 38(b)." *Id.* at 909 (citations omitted). However, it is clear from the court's rationale in *Wall* that it rejected "checking the jury demand box" as a proper demand under Rule 38(b) not be-

cause the civil cover sheet was an unacceptable type of document, but rather because it was not served on the other party: "The civil docket sheet is an administrative document designed to facilitate the court's management of a trial and is not served on the opposing party. Thus, it cannot substitute for proper service under rule 38(b)." *Id.* Therefore, *Wall* does not support the Government's argument that only certain documents may be served and filed in accordance with Rule 38(b) but rather reinforces that a jury demand, in whatever form, must be properly served.

■ In fact, the requirement that a jury demand be "sufficiently clear to alert a careful reader that a jury trial is requested on an issue," *Lutz*, 403 F.3d at 1064, guides me to consider the document's content, not its classification or formal description. Here, I find that Baldwin's Redlined Case Management Statement was "sufficiently clear to alert a careful reader that a jury trial is requested on an issue." *See id.* While "This is a jury case," does not appear until the fourth page of the Redlined Case Management Statement (docket no. 18), the Ninth Circuit Court of Appeals has previously approved jury demands that are within the body of a document. *See Lutz*, 403 F.3d at 1064–65; *Pradier*, 641 F.2d at 810–11.

■ Furthermore, it appears that the Redlined Case Management Statement satisfied the underlying "purpose of Rule 38's demand requirement . . . to inform

---

19. Likewise, the rules for service and filing of pleadings and papers do not constrain the type of document that may be "served" or "filed." Rule 5(a), explaining service of demands, simply provides that "a written . . . demand" "must be served on every party," *see* FED.R.CIV.P. 5(a)(1)(E), but includes no limitations on the type of document in which the written demand must appear. Rule 5(d)(1), explaining filing, refers to "[a]ny *paper* after the complaint that is required to be

served," *see* FED.R.CIV.P. 5(d)(1) (emphasis added), but indicates no reservations as to the type of "paper." Here, the "paper . . . that is required to be served," *see id.*, is the written jury demand under Rule 38(b). Therefore, any constraints on the "type" of paper would come from Rule 38(b). However, Rule 38(b) imposes no restrictions on the "type" of document in which a demand must appear, other than that the demand be "written."

the Court and counsel well in advance of trial as to the trial method desired." *See Lutz*, 403 F.3d at 1065 (citation and internal quotation marks omitted). The Government indicated in its memorandum in support of its Motion To Strike (*see* docket no. 22–1 at 2:23–3:3) and admitted at oral arguments before me on August 18, 2011, that receipt of the Redlined Case Management Statement put it on notice that Baldwin wanted a jury trial. The Strike Order, though disputing whether the Redlined Case Management Statement could be properly served, nevertheless indicated that it informed the Government that Baldwin desired a jury trial: "[The draft case management statement] included the demand for jury trial, but merely putting plaintiff [*sic*, defendant] on notice that there was a difference of opinion does not count as 'service.'" Strike Order at 5:2–7 (docket no. 37). Moreover, when Baldwin filed the Redlined Case Management Statement with the court (docket no. 18), he noted on the first page of the document, the Certificate of Service, that it contained a Notice of Jury Demand, thereby indicating to the court that he desired a jury trial. While Baldwin's Demand A is certainly not the epitome of clarity, I am mindful that I should " 'indulge every reasonable presumption against waiver' of the jury trial right," *Lutz*, 403 F.3d at 1064 (quoting *Aetna Ins. Co.*, 301 U.S. at 393, 57 S.Ct. 809), and, as a result, "accept jury demands that fall far short of the ideal," *see id.* Therefore, I find that Baldwin's Demand A is "sufficiently clear to alert a careful reader that a jury trial is requested on an issue." *See id.*[20] Thus, I reject as clearly erroneous the Strike Order's contention that a draft case management statement does not constitute a document that can be served and filed as a jury demand under Rule 38(b). The remaining questions, then, in determining if Demand A was proper under Rule 38(b), are whether the Redlined Case Management Statement was, in fact, timely served and filed.

The second requirement for an adequate jury demand, timely and proper service, is a thornier issue in this case. The last day for timely service of Baldwin's jury demand was November 9, 2009. *See* Government's Response at 3:2 (docket no. 74); Baldwin's Motion For Reconsideration at 7:1–3 (docket no. 70). Baldwin's attorney e-mailed the Redlined Case Management Statement to defense counsel on November 9, 2009, making it timely. The question, however, is whether e-mailing constituted proper service in this case. The Strike Order, after citing Rule 38(b)'s requirements, concluded, "To elevate an informal e-mail exchange of draft case management plans to the status of 'service' does not comport with the technical sense with which that word is used in the Rule." Strike Order at 4:3–7 (docket no. 37). The Strike Order does not cite any authority for the conclusion that e-mail cannot constitute service, and it does not cite or analyze Rule 5(b)(2)(E), which identifies the requirements for electronic service. The Government argues that, while it consented to service through CM/ECF Notice

---

20. My determination is consistent with the conclusions of two other district courts—one in this circuit—that jury demands found in draft case management statements satisfy the requirements of Rule 38(b). *See Williams v. Agilent Techs.*, No. 04–1810 MMC, 2004 WL 2848005, at *1 (N.D.Cal. Dec. 10, 2004) ("[P]laintiffs filed and served on defendant a case management statement demanding a jury trial[, which] . . . satisfied the provisions of Rule 38(b)."); *Palmer v. Angelica Healthcare Servs. Group, Inc.*, 170 F.R.D. 88, 89–90 (N.D.N.Y.1997) (finding, where the plaintiff filed but did not serve a civil docket sheet demanding a jury trial, that the plaintiff's draft case management plan, which she served on the defendant and which included her jury demand, while "not the preferred practice," satisfied Rule 38(b)).

of Filing messages, it did not consent to service by e-mail. Baldwin argues that the Government's consent to electronic service includes e-mail.

Rule 5(b) provides for electronic service as follows: "A paper is served under this rule by: ... sending it by electronic means if the person consented in writing—in which event service is complete upon transmission...." FED.R.CIV.P. 5(b)(2)(E). Rule 5(b)(3) provides for electronic service under Rule 5(b)(2)(E) using a court's facility, such as CM/ECF: "If a local rule so authorizes, a party may use the court's transmission facilities to make service under Rule 5(b)(2)(E)." FED.R.CIV.P. 5(b)(3). When the Ninth Circuit Court of Appeals has interpreted "electronic service" within the meaning of Rule 5(b), it has understood the term to include e-mail. *See Calderon v. IBEW Local 47*, 508 F.3d 883, 884 (9th Cir.2007) (finding that e-mail notification of a show cause hearing was insufficient where the party had not consented to electronic service under Rule 5(b)); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1018 n. 6 (9th Cir.2002) (finding service by e-mail to be permitted, subject to conditions in Rule 5, in response to the party's argument that service by e-mail is never allowed). While the term "electronic service" thus generally appears to contemplate service by e-mail, parties are free under Rule 5(b)(2)(E) to limit and define for themselves, through their written consent, what "electronic service" means. The Advisory Committee Notes instruct that consent to electronic service must be "express" and indicate that "[p]arties are encouraged to specify the scope and duration of the consent." FED.R.CIV.P. 5, Advisory Committee Notes to the 2001 Amendment.[21]

■ The issue here, then, is the scope of Government counsel's consent under Rule 5(b)(2)(E): whether Mr. Hendon agreed only to service through CM/ECF e-mail notification or whether his consent included e-mail between the parties, as well. The User Agreement For Electronic Case Filing At The United States District Court For The Northern Mariana Islands (User Agreement), *see* Baldwin's Exhibit 5 (docket no. 70–2 at 34–35), which Mr. Hendon signed, states, "I agree to receive electronic service of documents, by email to the address(es) shown above." *See* User Agreement at 2. On its face, then, his express consent appears to include service by e-mail.

On the other hand, Mr. Hendon's mandatory consent occurred only in the context of agreeing to use the CM/ECF system for this district. The User Agreement itself states, "This registration agreement is required of every 'Filing User' who will file case documents online, using the 'Case Management/Electronic Case Filing' (CM/ECF) system operated by the United States District Court for the Northern Mariana Islands." *See* User Agreement at 1. Moreover, the User Agreement indicates that the procedures for using CM/ECF are set by the *Administrative Procedures for Electronic Filing and Electronic Service for the United States District*

---

**21.** The Advisory Committee Notes to the 2001 Amendment explain the provisions for electronic service found in Rule 5(b)(2)(D), which was the nearly identical precursor to the current Rule 5(b)(2)(E) and provided: "Service under Rule 5(a) is made by: ... (D) Delivering a copy by any other means, including electronic means, consented to in writing by the person served. Service by electronic means is complete on transmission...." FED. R.CIV.P. 5(b)(2)(D) (pre–2007 Amendment Version). Because the versions are so similar, the Advisory Committee Notes to the 2001 Amendment can properly be used to inform an analysis of electronic service under the current Rule 5(b)(2)(E). *See* FED.R.CIV.P. 5, Advisory Committee Notes to the 2007 Amendment (providing that "[t]hese changes are intended to be stylistic only").

*Court for the Northern Mariana Islands,* which describe electronic service as follows: "The 'Notice of Electronic Filing' that is automatically generated by the court's Electronic Filing System, except as provided below, constitutes service of the filed document on Filing Users." *See* Administrative Procedures for Electronic Filing and Electronic Service for the United States District Court for the Northern Mariana Islands at 6 (effective June 15, 2006), http://www.nmid.uscourts.gov/documents/publications/adminproecfs.pdf.

Nonetheless, the Federal Rules encourage parties to define for themselves the terms of their electronic service. *See* FED. R.CIV.P. 5, Advisory Committee Notes to the 2001 Amendment. Arguably, if Mr. Hendon did not want to receive service by e-mail for this case, other than by CM/ECF Notice of Filings, he could have communicated this in writing to Baldwin's counsel.

■ All told, Mr. Hendon's express written consent includes e-mail. It is a close call, based on the limited context in which he made the consent and the references in the User Agreement to the Administrative Procedures, which provide that electronic service occurs through a "Notice of Electronic Filing." Nonetheless, I find that Mr. Hendon did, indeed, consent to service by e-mail, meaning that when Baldwin e-mailed the Redlined Case Management Statement on November 9, 2009, to the Government, he timely and properly served his jury demand. Even though this is a close question, the Strike Order's conclusion to the contrary was clearly erroneous, as it did not cite any authority for its determination that e-mailing did not constitute service here and did not apply Rule 5(b), which articulates proper methods of service. Alternatively, substantially different evidence has emerged to justify my review of the Strike Order's conclusion that Baldwin's e-mail did not constitute service. The User Agreement, Baldwin's Exhibit 5 (docket no. 70–2 at 34–35), was not before Chief Judge Munson when he issued the Strike Order. Importantly, this User Agreement identifies the scope of Mr. Hendon's written consent, and, therefore, is substantially different from the evidence before Chief Judge Munson at the time of the Strike Order, which was merely that Mr. Hendon had consented to electronic service (but not the extent of his consent). Therefore, under both the "clearly erroneous" and "substantially different evidence" grounds, I may reconsider the Strike Order's ruling that Baldwin's e-mail did not rise to the level of formal service.

■ Third and finally, Baldwin met the requirement of filing within a reasonable time of service. The Government concedes that the Strike Order erred in concluding that Rule 38(b) required both service *and* filing within ten days. Rather, Rule 38(b) only requires "filing the demand in accordance with Rule 5(d)." *See* Fed.R.Civ.P. 38(b). Rule 5(d)(1) provides: "Any paper after the complaint that is required to be served—together with a certificate of service—must be filed within a reasonable time after service." *See* FED. R.CIV.P. 5(d)(1). Here, Baldwin filed the Redlined Case Management Statement, with a certificate of service, on November 14, 2009, only five days after serving it on the Government. (docket no. 18.) Thus, he satisfied the requirements of Rule 5(d)(1). Therefore, I reject as clearly erroneous the Strike Order's conclusion that Demand A was not properly filed.

Baldwin's Demand A satisfies the requirements for an adequate jury demand under Rule 38(b). Of course, I am not deciding *de novo* whether Baldwin's Demand A was adequate but, rather, reviewing the Strike Order. I find all of the grounds on which the Strike Order rejected Demand A to be clearly erroneous.

Alternatively, I find that substantially different evidence justifies my review of the Strike Order's determination that e-mailing Demand A did not constitute service. I also find that enforcing the Strike Order's clearly erroneous ruling on Demand A would work a manifest injustice by depriving Baldwin of his right to a jury trial. Therefore, I reverse Chief Judge Munson's order to strike Demand A. Baldwin's Demand A, his Redlined Case Management Statement served by e-mail on November 9, 2009, and filed on November 14, 2009 (docket no. 18), was adequate, and he may try his case before a jury.

Although I have determined that Baldwin is entitled to a jury trial based on Demand A alone, I now consider for the sake of completeness whether, in the alternative, Demand B satisfies the requirements for an adequate jury demand.

### C. Jury Demand B

#### 1. Chief Judge Munson's Order

Chief Judge Munson struck Demand B, Baldwin's free-standing Demand For Jury Trial, as untimely. The Strike Order rejected Baldwin's argument that the court should exercise its discretion to order a jury trial under Rule 39(b). Chief Judge Munson found himself bound by the Ninth Circuit Court of Appeals's precedent that interprets 39(b) very narrowly: "the discretion afforded the trial court under 39(b) to order a jury trial even when one has not been timely requested is 'narrow ... and does not permit a court to grant relief when the failure to make a timely demand results from an oversight or inadvertence.'" Strike Order at 4:18–24 (quoting *Pac. Fisheries Corp.*, 239 F.3d at 1002). The Strike Order, finding that Baldwin's failure to make a proper and timely demand was due to oversight or inadvertence, thus concluded, "[U]nder existing Ninth Circuit precedent, this court may not exercise its discretion to order a jury trial despite the failure to timely demand

one." *Id.* at 5:10–13. The Strike Order did not address Baldwin's argument that the court could, under Rule 6(b), extend the deadline for filing a jury demand under Rule 38(b).

#### 2. Arguments by the parties

Baldwin contends that Chief Judge Munson's decision to strike Demand B is clearly erroneous because it was based solely on Rule 39(b) and failed to consider Baldwin's argument under Rule 6(b) that the Rule 38(b) deadline for making a jury demand may be extended for excusable neglect. Baldwin argues that, under relevant United States Supreme Court precedent that the Strike Order failed to consider, *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the deadline for filing a timely jury demand under Rule 38(b) may be extended under the Rule 6(b) exception for excusable neglect. Baldwin asks that I now grant his motion under Rule 6(b) for an extension of time to make his Demand B.

The Government responds that, although the Strike Order did not explicitly refer to Baldwin's Rule 6(b) argument, Baldwin's argument was before Chief Judge Munson, and he still found that he did not have discretion to allow an untimely jury demand. The Government urges that the Ninth Circuit Court of Appeals's precedent limiting a district court's discretion under Rule 39(b) precludes an "end-run" under Rule 6(b) around the requirements for a timely jury demand.

#### 3. Analysis

##### a. Federal Rule of Civil Procedure 39(b)

Federal Rule of Civil Procedure 39(b) instructs: "Issues on which a jury trial is not properly demanded are to be tried by the court. But the court may, on

motion, order a jury trial on any issue for which a jury might have been demanded." FED. R. CIV. P. 39(b). The Ninth Circuit Court of Appeals has very narrowly construed a district court's discretion under Rule 39(b) to grant a jury trial where a party's demand was untimely under Rule 38(b). "An untimely request for a jury trial must be denied unless some cause beyond mere inadvertence is shown." *Pac. Fisheries Corp.*, 239 F.3d at 1002 (affirming district court's denial of untimely demand for jury trial under Rule 39(b)) (citing *Mardesich v. Marciel*, 538 F.2d 848, 849 (9th Cir.1976); *Russ v. Standard Ins. Co.*, 120 F.3d 988, 989–90 (9th Cir.1997) (holding that a district court could not allow a plaintiff to dismiss and refile under Rule 41(a)(2) in order to avoid this circuit's "read[ing of] Rule 39(b) to prohibit district courts from excusing an inadvertent failure to request a jury trial"); *Kletzelman v. Capistrano Unified Sch. Dist.*, 91 F.3d 68, 71 (9th Cir.1996) (finding district court's denial of an untimely demand to be proper under Rule 39(b) where cause was inadvertence); *Wall*, 718 F.2d at 910 (affirming district court's denial of an untimely jury demand under 39(b) where cause was inadvertence)); *accord Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1086–87 (9th Cir. 2002). The Ninth Circuit Court of Appeals is one of the two strictest circuits in the nation in its construction of Rule 39(b).[22] The only other circuit to share its narrow interpretation of Rule 39(b) is the

---

**22.** The Circuit Courts of Appeals vary in their interpretations of a district court's discretion under Rule 39(b) and their treatment of a party's failure to make a timely jury demand due to inadvertence. On the opposite end of the spectrum from the Ninth Circuit Court of Appeals, at least one circuit encourages district courts to exercise discretion in favor of granting a jury trial under 39(b). *See, e.g., Members v. Paige*, 140 F.3d 699, 703–04 (7th Cir.1998) ("Rule 39(b) does not require litigants to surmount a hurdle such as 'excusable neglect'.... [A]pplications under Rule 39(b) should be entertained with an open mind....").

Several circuits use a balancing test to determine whether the grant of a jury trial is appropriate under Rule 39(b), though some note that district courts often may—but not must—deny late jury demands caused by inadvertence. *See, e.g., S.E.C. v. Infinity Grp. Co.*, 212 F.3d 180, 195–96 (3d Cir.2000) (noting that although courts in the Third Circuit often deny relief under Rule 39(b) when the cause is inadvertence, courts consider "1) whether the issues are suitable for a jury; 2) whether granting the motion would disrupt the schedule of the Court or the adverse party; 3) whether any prejudice would result to the adverse party; 4) how long the party delayed in bringing the motion; and 5) the reasons for the failure to file a timely demand" (citation omitted); *BCCI Holdings (Lux.), S.A. v. Khalil*, 214 F.3d 168, 172–73 (D.C.Cir.2000) (noting that a district court is "not required to grant a Rule 39(b) request based on nothing but inadvertence" and examining the reason for the late demand and the prejudice to the other party) (citing *Pierce v. Underwood*, 487 U.S. 552, 562, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)); *Malbon v. Pa. Millers Mut. Ins. Co.*, 636 F.2d 936, 940 n. 11 (4th Cir.1980) (considering factors similar to those in *S.E.C.*); *Parrott v. Wilson*, 707 F.2d 1262, 1267 (11th Cir.1983) (considering factors similar to those in *S.E.C.* and noting that "the trial court 'should grant a jury trial in the absence of strong and compelling reasons to the contrary.'" (quoting *Swofford v. B & W, Inc.*, 336 F.2d 406, 408 (5th Cir.1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965)).

There are also those circuits that leave decisions under Rule 39(b) completely to the district court's discretion. *See, e.g., Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 632 (6th Cir.2008) ("A district court has broad discretion in deciding whether to grant a Rule 39(b) motion. Generally, a district court will not abuse its discretion in denying a Rule 39(b) motion if the only justification offered for failure to demand a jury trial is mere inadvertence." (citations omitted)); *Farias v. Bexar Cnty. Bd. of Trs. for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 873 (5th Cir.1991) (stating, "A rule 39(b) motion is discretionary with the judge," and finding that the district court did not abuse its discretion in denying relief where the cause

Second Circuit Court of Appeals: "[M]ere inadvertence in failing to make a timely jury demand does not warrant a favorable exercise of discretion under Rule 39(b). . . ." *Noonan v. Cunard S.S. Co.*, 375 F.2d 69, 70 (2d Cir.1967); *accord Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 356–57 (2d Cir.2007); *Raymond v. IBM Corp.*, 148 F.3d 63, 65 (2d Cir.1998).

As a preliminary matter, I note that Chief Judge Munson's order was certainly correct that the Ninth Circuit Court of Appeals's strict interpretation of Rule 39(b) precluded the exercise of his discretion, at least under Rule 39(b), to grant Baldwin a jury trial. Baldwin's counsel inadvertently left the jury demand out of the complaint, *see* Second Decl. of Deborah Deitsch–Perez at 2 (docket no. 70–1), and "some cause beyond mere inadvertence" must be shown to justify the exercise of the district court's discretion under Rule 39(b). *See Pac. Fisheries Corp.*, 239 F.3d at 1002.

I now turn to the question of whether the Strike Order, despite correctly rejecting Baldwin's untimely demand under Rule 39(b), erroneously failed to consider Baldwin's argument under Rule 6(b) and to grant Baldwin's untimely jury demand under this alternate ground.

### b. Federal Rule of Civil Procedure 6(b)

Federal Rule of Civil Procedure 6(b)(1)(B) provides: "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fᴇᴅ.R.Cɪv.P. 6(b)(1)(B). "[Rule 6(b)(1)], like all the Federal Rules of Civil Procedure, '[is] to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits.'" *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258–59 (9th Cir.2010) (quoting *Rodgers v. Watt*, 722 F.2d 456, 459 (9th Cir.1983)). "'Good cause' is a non-rigorous standard that has been construed broadly across procedural and statutory contexts." *Id.* at 1259 (citations omitted).[23] In *Pioneer Investment*

was "mere inadvertence"); *Nissan Motor Corp. v. Burciaga*, 982 F.2d 408, 409 (10th Cir.1992) (per curiam) (stating, "[A]bsent strong and compelling reasons to the contrary, a district court should exercise its discretion under Rule 39(b) and grant a jury trial," though finding that the district court did not abuse its discretion in denying relief where the cause was "mere inadvertence") (citation omitted); *Rowlett v. Anheuser–Busch, Inc.*, 832 F.2d 194, 200 (1st Cir.1987) ("We are of the view that the discretion under Rule 39(b) is very broad and that the case would be very rare indeed where a district court abused its discretion in denying or granting a Rule 39(b) motion."), *abrog. on other grounds by Iacobucci v. Boulter*, 193 F.3d 14, 27 (1st Cir.1999); *Littlefield v. Fort Dodge Messenger*, 614 F.2d 581, 585 (8th Cir. 1980) (determining that "jury trials ought to be liberally granted when no prejudice results . . . ." but affirming district court's denial of jury trial under Rule 39(b) where counsel's failure was due to inexperience, the party

demonstrated no prejudice resulting from the denial, and the party showed a pattern of delaying trial).

23. It appears that a finding of "excusable neglect" supports the existence of "good cause," as the Ninth Circuit Court of Appeals has described the "good cause" standard as "less rigorous than excusable neglect." *See Speiser, Krause & Madole P.C. v. Ortiz*, 271 F.3d 884, 887 (9th Cir.2001) (referring to "good cause" as used in Federal Rule of Civil Procedure 55(c)) (citing *Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir.1986)). When interpreting "good cause" for the purposes of a 6(b)(1)(A) motion, where the original deadline for filing has not yet expired and no showing of excusable neglect is required, the Ninth Circuit Court of Appeals has looked at the same factors as those used in evaluating excusable neglect (including reason for delay, prejudice to the other party, and good faith). *See Ahanchian*, 624 F.3d at 1259–60.

*Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the United States Supreme Court adopted a four-factor equitable test for determining what constitutes "excusable neglect": "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *See id.* at 395, 113 S.Ct. 1489.

 Although *Pioneer* interpreted the "excusable neglect" standard of Bankruptcy Rule 9006(b), *see id.,* the Ninth Circuit Court of Appeals has specifically held that the four-factor Pioneer test applies to determinations of what constitutes "excusable neglect" under other rules containing that term, including Rule 6(b) of the Federal Rules of Civil Procedure. *See In re Veritas Software Corp. Secs. Litig.,* 496 F.3d 962, 973 (9th Cir.2007) (applying Pioneer test to Rule 6(b) "excusable neglect" analysis); *accord Comm. for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814, 825 n. 4 (9th Cir.1996) (*Pioneer* analysis applies to Rule 6(b)); *see also Pincay v. Andrews,* 389 F.3d 853, 859 (9th Cir.2004) (en banc) (applying *Pioneer* test to Federal Rule of Appellate Procedure 4(a)); *Briones v. Riviera Hotel & Casino,* 116 F.3d 379, 381–82 (9th Cir.1997) (applying *Pioneer* test to Federal Rule of Civil Procedure 60(b) and reiterating that *Pioneer* applies to Federal Rule of Civil Procedure 6(b)). When faced with a request for relief based on "excusable neglect" under Rule 6(b), a district court "must consider" the four-factor *Pioneer* test. *In re Veritas Software Corp.,* 496 F.3d at 973; *cf. Bateman v. U.S. Postal Serv.,* 231 F.3d 1220, 1223–24 (9th Cir. 2000) (finding district court abused its discretion in not applying the *Pioneer* equitable analysis to determine whether neglect was excusable under Rule 60(b)); *Ahanchian,* 624 F.3d at 1261 (For Rule 60(b)

motions, "[t]o determine whether a party's failure to meet a deadline constitutes 'excusable neglect,' courts must apply [the *Pioneer* ] four-factor equitable test. . . ."). Moreover, when evaluating whether neglect is excusable, a district court cannot use any *per se* restriction on what may be "excusable" and instead must weigh the *Pioneer* equitable factors. *See Pincay,* 389 F.3d at 855 ("We now hold that per se rules are not consistent with *Pioneer* . . . ."); *accord Ahanchian,* 624 F.3d at 1261–62.

The Supreme Court reasoned in *Pioneer* that Rule 6(b), like the timing provisions of Bankruptcy Rule 9006, is "generally applicable to any time requirement found elsewhere in the rules unless expressly excepted." *See Pioneer,* 507 U.S. at 389 n. 4, 113 S.Ct. 1489. Rule 6(b) explicitly prohibits its application to the deadlines found in several federal rules: "A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b)." FED. R.CIV.P. 6(b)(2). Rule 38(b)'s deadline for making a timely jury demand is conspicuously absent from this list of exceptions. Thus, "the plain text of Rule 6(b)(2) suggests that the rule is meant to apply to the time constraint imposed by Rule 38(b)." *See Raymond,* 148 F.3d at 66. Therefore, Rule 6(b), as well as *Pioneer's* interpretation of the excusable neglect standard, apply to Rule 38(b) and afford a district judge the discretion to excuse an untimely jury demand on the basis of excusable neglect.

The Government makes a persuasive argument against this conclusion, arguing that the Ninth Circuit Court of Appeals's flat-out refusal under Rule 39(b) to excuse a party's untimely jury demand due to inadvertence has foreclosed any possibility of an "end-run" around this restriction through any other Federal Rule of Civil Procedure. Indeed, the language of the

Ninth Circuit Court of Appeals's rejection of untimely jury demands due to inadvertence has been forceful: "An untimely request for a jury trial must be denied unless some cause beyond mere inadvertence is shown." *Pac. Fisheries Corp.*, 239 F.3d at 1002; *accord Zivkovic*, 302 F.3d at 1086. Importantly, however, while this language appears to reject categorically untimely demands based on inadvertence, the Ninth Circuit Court of Appeals has only arrived at this holding in response to a petitioner's argument that, despite its inadvertent failure to file a timely jury demand, a grant of a jury trial is appropriate under Rule 39(b). *See, e.g., Pac. Fisheries Corp.*, 239 F.3d at 1002; *Mardesich*, 538 F.2d at 849; *Russ*, 120 F.3d at 989–90; *Kletzelman*, 91 F.3d at 71; *Wall*, 718 F.2d at 909–10; *Zivkovic*, 302 F.3d at 1086. None of these cases involved an argument for an extension of time under Rule 6(b) to make a jury demand under Rule 38(b).

In fact, in its only case to consider a petitioner's requests both for an extension of time under Rule 6(b) to file a jury demand *and* for relief under Rule 39(b), the Ninth Circuit Court of Appeals, analyzing each rule separately, indicated that Rule 6(b) indeed does apply to the deadline for filing a jury demand under Rule 38(b), though it ultimately concluded that the district judge had not abused his discretion in denying relief under both Rule 6(b) and Rule 39(b). *See Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 675 (9th Cir.1975). The court, however, did caution, "Relief under [Rule 6(b)] is within the 'discretion' of the District Court, and that discretion should rarely be exercised to grant a trial by jury in default of a proper request for it." *Id.* at 675 (citing *Mason v. British Overseas Airways Corp.*, 20 F.R.D. 213, 214 (S.D.N.Y.1957)). Importantly, this admonition predated *Pioneer*, under which the Ninth Circuit Court of Appeals has jettisoned any *per se* restrictions on a district court's finding of

"excusable neglect" in favor of the *Pioneer* balancing test: "There should ... be no rigid legal rule against late filings attributable to any particular type of negligence. Instead, we leave the weighing of *Pioneer's* equitable factors to the discretion of the district court in every case." *Pincay*, 389 F.3d at 860; *accord Ahanchian*, 624 F.3d at 1261. Thus, it appears that, even though relief is not available under Rule 39(b) for a party that fails to make a timely demand due to inadvertence, a district court, under Rule 6(b), may still find excusable neglect and extend the deadline for making a jury demand under Rule 38(b).

The strongest argument in support of the Government's position that Baldwin cannot make an "end-run" around this circuit's strict interpretation of Rule 39(b) comes by analogy from a case involving the interaction between Rule 39(b) and Rule 41(a)(2), which permits voluntary dismissal without prejudice. *See* FED. R.CIV.P. 41(a)(2). In *Russ v. Standard Insurance Co.*, 120 F.3d 988 (9th Cir.1997), the Ninth Circuit Court of Appeals, where the plaintiff had failed to make a timely jury demand under Rule 38(b), reversed the district court's order that "dismissed plaintiff's case pursuant to Rule 41(a)(2) so that [she] could refile her claims and then make a timely jury demand." *Id.* at 989. The Ninth Circuit Court of Appeals concluded that a district court may not "employ the broad discretion granted in Rule 41 to accomplish indirectly what we have held cannot be accomplished directly under Rule 39(b)." *See id.* Citing its preference for "follow[ing] the more specific rule over one more general," *id.* at 990 (citing *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 524, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989)), the court determined, "[O]ur specific prohibition on district courts granting jury trials where the parties have failed to comply with Rule 38 must trump

the more general discretionary powers of district courts to permit plaintiffs to dismiss under Rule 41(a)(2)." *Id.* The court also highlighted that holding otherwise would unfairly prejudice defendants, who would have no recourse to dismissal without prejudice to cure their failure to make a timely jury demand. *Id.*

At first blush, *Russ* would appear, just as the Government argues, to bar a district court's use of another Federal Rule of Civil Procedure to excuse a party's failure to make a timely jury demand due to inadvertence. Indeed, the Ninth Circuit Court of Appeals later characterized *Russ* in bold terms as "holding that the district court could not employ another rule to circumvent this circuit's prohibition on granting untimely jury demands due to inadvertence." *Pac. Fisheries Corp.*, 239 F.3d at 1002. This passing description of *Russ* in *Pacific Fisheries* is only dicta, however, and an analysis of *Russ*, as shown above, reveals that *Russ* only speaks to the specific interaction of Rule 41(a)(2), not of all of the Federal Rules of Civil Procedure more generally, with the Ninth Circuit Court of Appeals's strict interpretation of Rule 39(b). Therefore, *Russ* does not foreclose the application of Rule 6(b) to the deadline for making a jury demand.

This conclusion finds further support in the Second Circuit Court of Appeals's analysis of the interplay between Rule 41(a)(2) and Rule 39(b), versus its treatment of the application of Rule 6(b) to Rule 38(b). The Second Circuit Court of Appeals, which, as noted above, shares the Ninth Circuit Court of Appeals's strict interpretation of Rule 39(b), has also found that a district court judge may not dismiss a case without prejudice under Rule 41(a)(2) so that a plaintiff may refile and make a timely jury demand. *See Noonan,* 375 F.2d at 71–72. In fact, the Ninth Circuit Court of Appeals followed *Noo-*

*nan's* analysis in arriving at its holding in *Russ,* demonstrating that the Ninth Circuit Court of Appeals has looked to the Second Circuit Court of Appeals for guidance in resolving the interaction between its strict interpretation of Rule 39(b) and other federal rules. *See Russ,* 120 F.3d at 989–90. The Second Circuit Court of Appeals subsequently addressed Rule 6(b)'s application to Rule 38(b) and faced the exact argument urged by the Government in this case: if a district court may not use Rule 41(a)(2) to circumvent the strict timing requirements for a proper jury demand when a party inadvertently fails to make a timely demand, it likewise cannot apply Rule 6(b) to reach the same result. *See Raymond,* 148 F.3d at 66. The Second Circuit Court of Appeals rejected this argument, noting that *Pioneer* established that Rule 6(b) applies to every deadline in the federal rules, other than specifically named exceptions, and therefore applies to the deadline in Rule 38(b). *Id.* The court concluded that, even though a district court may not grant relief under Rule 39(b) when a party fails to make a timely jury demand due to inadvertence, a district court may excuse a party's inadvertence under Rule 6(b), as long as the district court finds that the party's inadvertence, based on the particular facts of the case, constitutes "excusable neglect" under the *Pioneer* test. *Id.*

Given that the Ninth Circuit Court of Appeals has previously relied on the Second Circuit Court of Appeals's analysis in applying its similarly strict reading of Rule 39(b) to other federal rules, I find *Raymond* especially persuasive here. Moreover, there are compelling distinctions between *Russ's* analysis of Rule 41(a)(2)'s interaction with Rule 39(b) and the application of Rule 6(b) to Rule 38(b). First, in analyzing whether a district court judge should be permitted to

dismiss a case so the plaintiff can refile with a timely jury demand, the Ninth Circuit Court of Appeals in *Russ* was not laboring under United States Supreme Court precedent regarding the application of Rule 41(a)(2), whereas here, *Pioneer* has provided that Rule 6(b)'s "excusable neglect" provision applies to all deadlines in the federal rules unless otherwise excepted. *See Pioneer*, 507 U.S. at 389 n. 4, 113 S.Ct. 1489. Second, the court's concern in *Russ* stemmed, at least in part, from the unfairness to defendants that would result from permitting plaintiffs to dismiss without prejudice under Rule 41(a)(2) and refile with a timely jury demand, as this opportunity to cure would only be open to plaintiffs. *See Russ*, 120 F.3d at 990. Here, in contrast, a motion under Rule 6(b) for an extension due to excusable neglect is an avenue available to plaintiffs and defendants alike, *see* FED.R.CIV.P. 6(b)(1)(B), so no unfairness results. Therefore, I ultimately find the Government's arguments against the application of Rule 6(b) to the Rule 38(b) deadline unpersuasive. A district court may, in its discretion, extend the deadline for filing a jury demand, pursuant to Rule 6(b), for excusable neglect. *See* FED.R.CIV.P. 6(b)(1)(B)-(b)(2).

■ The Strike Order did not consider Baldwin's argument under Rule 6(b) that the court should extend the filing deadline of Rule 38(b) and accept Demand B. Because the United States Supreme Court has stated that Rule 6(b) applies to all deadlines in the federal rules, other than those explicitly excepted, *see Pioneer*, 507 U.S. at 389 n. 4, 113 S.Ct. 1489, I find that the Strike Order was clearly erroneous in not considering Baldwin's argument that the court should extend his deadline for making a timely jury demand under Rule 6(b). Even conceding the Government's argument that Chief Judge Munson implicitly considered the Rule 6(b) argument, the Strike Order did not use the *Pioneer* equitable test for "excusable neglect." A district court "must consider" the four-factor *Pioneer* test when evaluating whether neglect is excusable under Rule 6(b). *See In re Veritas Software Corp.*, 496 F.3d at 973. I find that the Strike Order clearly erred by not considering the Ninth Circuit Court of Appeals's precedent requiring district courts to apply the *Pioneer* test to the excusable neglect analysis under Rule 6(b). Likewise, a district court is prohibited from relying on a *per se* restriction on what may constitute excusable neglect and must examine the facts of the case in light of the *Pioneer* test. *See Pincay*, 389 F.3d at 860; *Ahanchian*, 624 F.3d at 1261. Although the Strike Order does not refer to Rule 6(b), it appears to reject Demand B on the premise that an extension under Rule 6(b) for filing jury demands is *per se* prohibited by the Ninth Circuit Court of Appeals's strict view of Rules 38 and 39. Because the Strike Order appears to use a *per se* rule, in lieu of the application of the *Pioneer* equitable test, I find that it clearly erred in its rejection of Baldwin's Rule 6(b) argument.

■ I now consider Baldwin's argument that the court should, under Rule 6(b), extend the deadline for making a jury demand, such that Demand B would be proper. In evaluating his argument, I apply the *Pioneer* test. *See Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489; *see also In re Veritas Software Corp.*, 496 F.3d at 973. "[T]he weighing of *Pioneer's* equitable factors [is left] to the discretion of the district court in every case." *See Pincay*, 389 F.3d at 860.

■ First, I find that there is no danger of prejudice to the Government. The Government had actual, timely notice of Baldwin's jury demand because it received Demand A, Baldwin's Redlined Case Management Statement, which stated, "This is a jury case," before the Rule 38(b) dead-

line elapsed. The Government indicated in its memorandum in support of its Motion To Strike (docket no. 22–1 at 2:23–3:4) and admitted at oral arguments before me on August 18, 2011, that receipt of the Red-lined Case Management Statement put it on notice that Baldwin wanted a jury trial. Moreover, since that time, Baldwin has been consistent in representing to Government counsel that he intended to seek reconsideration of the Strike Order, as shown by e-mails from Baldwin's counsel, Ms. Deitsch–Perez, to Government counsel, Mr. Hendon. *See* Baldwin's Exhibit 8 (docket no. 70–2 at 48–49). Therefore, it should come as no surprise to the Government that there was a possibility that this court would revisit the Strike Order and extend the deadline for making a jury demand under Rule 6(b). Allowing Baldwin to reinstate his jury Demand B does not prejudice the Government's trial strategy and preparation, as trial is still many months away. When I asked the Government at oral arguments on August 18, 2011, how reinstating Baldwin's jury demand would be prejudicial, the Government responded that it would rather try the case before a judge. The Government mistakes preference for prejudice. As I have explained, the Government is not prejudiced here.

Second, the length of the delay was minimal. To have been timely, Baldwin would have needed to serve Demand B by November 9, 2009. Baldwin made Demand B on November 11, 2009. (docket no. 16.) The delay here—two days—was thus very slight. *Compare Ahanchian,* 624 F.3d at 1262 (finding excusable neglect when party's delay was a "mere three days"); *Bateman,* 231 F.3d at 1225 (finding a month-long delay "not long enough to justify denying relief," especially because "its potential impact on the judicial proceedings[ ] was also minimal"). The potential impact on the proceedings here is minimal because trial is still many months away.

 Third, the reason for the delay was, as the Strike Order noted, "an oversight or inadvertence." Strike Order at 5:9–11 (internal quotation marks omitted). Baldwin's attorneys did not notice that they had failed to include the jury demand in the complaint. *Pioneer* instructs courts to consider whether the reason for delay was "within the reasonable control of movant." *Pioneer,* 507 U.S. at 395, 113 S.Ct. 1489. Here, it was within Baldwin's control to ensure that the complaint properly included a jury demand or to make a timely demand within ten days of the Government's answer. Nevertheless, counsel's failure does not preclude relief here: "Excusable neglect 'encompass[es] situations in which the failure to comply with a filing deadline is attributable to negligence,' *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.,* 507 U.S. 380, 394, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), and includes 'omissions caused by carelessness,' *id.* at 388, 113 S.Ct. 1489." *Lemoge v. United States,* 587 F.3d 1188, 1192 (9th Cir.2009). The Ninth Circuit Court of Appeals, after weighing the *Pioneer* factors, has excused conduct worse than what occurred here. *See, e.g., Pincay,* 389 F.3d at 859 (affirming a district court's finding of excusable neglect where the attorney "fail[ed] to read an applicable rule"); *Bateman,* 231 F.3d at 1223–25 (reversing a district court's finding of no excusable neglect where the attorney, after missing a deadline due to a family emergency, did not act for over two weeks upon his return due to "jet lag and the time it took to sort through [his] mail"). The *Bateman* court conceded that the attorney's reasons for delay were "admittedly[ ] weak" but concluded that a strong showing on the other three *Pioneer* factors mitigated in favor of finding excusable neglect. *See Bateman,* 231 F.3d at 1225. Here, although counsel's oversight is not the most compelling reason for missing a deadline, I find that the other three

factors weigh strongly in favor of excusable neglect.

Fourth, Baldwin acted in good faith, as his attorney has sworn that her failure to include the jury demand in the complaint was an honest mistake. Second Decl. of Deborah Deitsch–Perez at 2 (docket no. 70–1). Baldwin's counsel acted quickly in making Demands A and B after realizing her mistake, which further supports a finding of a good faith mistake here. Both Baldwin and his attorney have attested that Baldwin has always intended to seek a jury trial. *See* Decl. of John K. Baldwin ¶ 2 (docket no. 26); Decl. of Deborah Deitsch Perez at 2:6–13 (docket no. 25). Baldwin prepaid over $5 million in taxes for the precise purpose of securing a jury trial, *see* Decl. of John K. Baldwin ¶ 2, lending further credence to his counsel's statements that the mistake was in good faith. Thus, this factor also weighs in Baldwin's favor.

I find, after weighing *Pioneer's* four equitable factors, that counsel's failure to make a timely demand constitutes excusable neglect under Rule 6(b). Therefore, the Strike Order was clearly erroneous in not considering Baldwin's Rule 6(b) argument and in not applying the *Pioneer* test. I also find that enforcing the order would work a manifest injustice, as it would deprive Baldwin of his right to a jury trial. For good cause shown, I grant Baldwin's motion for an extension of time to make his late Demand B under Rule 6(b). Because Baldwin already made Demand B on November 11, 2009 (docket no. 16), there is no need to make an additional jury demand. This Order will apply retroactively, and Demand B will be treated as proper under Rule 38(b).

### III. CONCLUSION

Chief Judge Alex Munson served the District of the Northern Mariana Islands for twenty years with unparalleled distinction and integrity. Thus, it is with great hesitation that I armchair quarterback his prior decision. I have the benefit of information not available to him and more extensive briefing—including the rare occurrence of briefs filed in the Ninth Circuit Court of Appeals and the United States Supreme Court. While reluctant to reconsider Chief Judge Munson's order, I was guided by the importance of the right to a jury trial at stake here.

One final point. There is a troubling undercurrent to this litigation, though it did not influence my decision here. It is as if the Department of Justice has forgotten President Thomas Jefferson's immortal words from his first inaugural address in 1801: "The wisdom of our sages and blood of our heroes have been devoted to the[ ] attainment [of trial by jury]." 3 WRITINGS OF THOMAS JEFFERSON 322 (Andrew A. Lipscomb ed., 1903). The Department of Justice seems either afraid or distrustful of a trial by jury in this case—I suspect both. It has extended enormous resources of time and money to defeat Baldwin's attempt to try this case to a jury. This is puzzling to me. My seventeen-plus years experience in my home district (which frequently leads the nation's ninety-four federal district courts in trials per judge), as well as the two jury trials I conducted in the District of the Northern Mariana Islands last month, teach that neither fear nor mistrust of juries is warranted. Juries in federal courts are truly the handmaid of freedom.

For the foregoing reasons, Baldwin's Motion To Reconsider (docket no. 70) is **granted.** The Strike Order (docket no. 37) is reversed. Baldwin's Motion Under Rule 6(b) To Allow Late Jury Demand (docket no. 70) is **granted.** Baldwin's Demand B, his Demand For Jury Trial (docket no. 16), is proper. Baldwin's Demand A, in his Redlined Case Management Statement

(docket no. 18), is also proper. The clerk is instructed to modify the docket to indicate that this is a jury trial.

IT IS SO ORDERED.